# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CASE NO: CR05-73-S-EJL |
| Plaintiff, | **MEMORANDUM ORDER** |
| vs. | |
| **JEFFREY R. BROWN,** | |
| Defendant. | |

Pending before the Court in the above entitled matter is Defendant Jeffrey Russell Brown's motion to suppress. The Court heard arguments on the motion on September 6, 2005 and requested briefing from counsel, which has now been received and the matter is ripe for the Court's review.

## FACTUAL BACKGROUND

Early in the morning of February 22, 2005 Officer Eric Stoffle of the Meridian City Police Department witnessed a car driven by the Defendant in the neighborhood of what he believed was a "known drug house." Officer Stoffle followed the vehicle observing that the driver failed to use his turn signal and exceeded the posted speed limit. Officer Stoffle then executed a traffic stop of the vehicle for speeding at 1:21.40 a.m.. Officer Stoffle approached the car and made routine inquiries of the Defendant regarding his travel plans and discovered the Defendant was not in possession of his driver's license; which Defendant told Officer Stoffle he had forgotten. Officer Stoffle returned to his patrol car with the Defendant's registration information and requested a K9 unit to respond to the scene and then proceeded to initiate a warrants check and NCIC check. The background checks returned at 1:26.45 a.m. revealing no outstanding warrants nor criminal history. Officer Stoffle then began writing a citation for the speeding infraction.

While Officer Stoffle was still in his patrol car finishing up writing the citation, at approximately 1:31.59 a.m., Corporal John Brown, the K9 Officer, arrived with a trainee officer, T.J. Wellard. Officer Stoffle and Corporal Brown exited their vehicles and were discussing how to

proceed when the Defendant also got out of his car, locked it, and approached the officers asking whether there was a problem. The officers directed the Defendant to wait beside the patrol car while the K9 Unit inspected the exterior of the car. The K9 alerted on the driver's door of the car whereupon Corporal Brown requested the Defendant's keys to unlock the door. The Defendant refused the request and stated that he needed/wanted "to call my lawyer" several times. The Defendant was then arrested for obstructing a police investigation, handcuffed, and placed in a patrol car. The officers located the keys in the Defendant's front pocket and proceeded to unlock the car and search its contents.

The search revealed 76 grams of methamphetamine, 235 grams of marijuana, $5,000 in cash, and a loaded handgun. Officer Stoffle returned to the patrol car and read the Defendant his Miranda rights to which the Defendant acknowledged that he understood his rights. The Defendant then proceeded to make incriminating statements in response to the officer's questions. As a result the Defendant has been indicted for Unlawful Possession of a Firearm by a Felon and Criminal Forfeiture. (Dkt. No. 1). The government subsequently filed an information, to which the Defendant waived his right to be charged by an indictment (Dkt. No. 28), charging Felon in Possession of Firearms, Possession of Methamphetamine with Intent to Distribute, Possession of Marijuana, Possession of a Firearm in Furtherance of a Drug Trafficking Crime, and Criminal Forfeiture. (Dkt. No. 23). Defendant has filed the instant motion to suppress and supplemental motion to suppress. The motions raise two central arguments surrounding the search. First, that the officers exceeded the scope of the stop without a proper basis and, second, that the interrogation of the Defendant after he had invoked his right to counsel violated the Sixth Amendment. The government disputes both points.

**ARGUMENTS**

1) <u>Initial Motion to Suppress</u>:

In the initial motion to suppress Defendant argues that because the initial stop was for a speeding violation, and possibly failure to carry a driver's license, the officers' inquiry was limited to the scope of a routine traffic stop. When the initial questioning and applicable checks revealed no additional basis for the stop, Defendant argues the officer was required to serve him with the speeding

ticket and release him. The additional K9 sniff and resulting search of the vehicle unreasonably expanded the scope of the traffic stop. In particular, the defense asserts the length of the stop, as relayed in the dispatch logs, was unreasonable. The government argues the officers did not exceed the scope of the stop and that the length of the stop was reasonable.

The defense refers to the recent Supreme Court opinion in Illinois v. Caballes, 125 S.Ct. 834 (2005) where an officer initiated a routine traffic stop for speeding. There, a K9 officer overheard the dispatch and, on his own, proceeded to the scene and conducted a dog sniff of the exterior of the vehicle. The dog alerted on the trunk and a subsequent search revealed marijuana. The stop lasted less than ten minutes. Certiorari was granted to decide the "narrow" issue of "Whether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop." Id. at 837. The Court held that "conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed [the suspect's] constitutionally protected interest in privacy." Id. The Court, however, recognized that "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Id.

As in Caballes, the parties here do not dispute that the initial stop was justified.[1] Thus, the question here is whether the length of the stop was unreasonable. The defense argues the stop should have been terminated once the warrants and NCIC checks provided no information justifying holding the Defendant and that the eleven minute stop was unreasonable. The defense also alleges that Officer Stoffle deliberately delayed completing the speeding ticket until the K9 Unit arrived; arguing 5 minutes and 14 seconds is an unreasonable amount of time to fill out the speeding ticket. The defense points to Officer Stoffle's testimony that he did not intend to let the Defendant leave until the K9 Unit

---

[1] The defense has also not challenged the validity of the K9 sniff. A dog alert during a traffic stop may provide probable cause to believe that a car contains drugs, the officers have a new justification to extend a traffic stop. Berkemer v. McCarty, 468 U.S. 420, 439-40 (1984) (stop can be extended if detainee's answers to question provide probable cause to arrest him); Florida v. Royer, 460 U.S. 491, 506 (1983) (positive dog alert would justify turning investigative detention into arrest).

arrived. The government asserts the length of the stop was reasonable in light of the fact that Officer Stoffle was still writing the speeding ticket when the K9 Unit arrived and the exterior sniff of the car was brief. In addition, the government argues the stop was lengthened only by the Defendant's actions in exiting the vehicle which raised officer safety concerns necessitating a further investigation by the officers.

At the hearing, Officer Stoffle agreed with the defense that as of 1:26.45 a.m. he had all the necessary information needed to complete the citation.[2] The defense cross-examined the officer in detail regarding completion of the citation over the next five-plus minutes, pointing out the straight-forward nature of the citation. On rebuttal, Officer Stoffle testified that while completing any citation his attention is diverted because he must also remain aware of his circumstances, observing the vehicle and suspect, and keeping an eye on anything approaching behind him. Further, Officer Stoffle noted that because he was a patrol officer he did not fill out a lot of citations and may be slower than other traffic officers who are more familiar with the process; acknowledging that if a traffic stop gets close to twenty minutes he "will stop the traffic stop and let the person go" and that an average traffic stop takes ten to fifteen minutes. Most importantly, Officer Stoffle testified consistently that when Corporal Brown arrived he was just finishing up the citation.

Based on the foregoing and the totality of the circumstances, the Court finds the length of time for completion of the citation was reasonable. The 5 minutes and 14 second time span Officer Stoffle consumed in writing the traffic citation was reasonable given the two warrants checks, the Officer's lack of familiarity with completing citations, and the other distractions. Although the defense highlights Officer Stoffle's concession that he was "not going to let [the Defendant] go until such time as Corporal Brown arrived," the fact still remains that he had not completed the speeding ticket or

---

[2] The defense points out an apparent inconsistency in the dispatch logs on this point. Officer Stoffle received the necessary information for the citation at 1:26.45 a.m. and Corporal Brown advised dispatch at 1:27 a.m. that he was en route to the scene. Thus, the defense suggests that prior to the en route call, Officer Stoffle had the necessary information and could have called off the K9 Unit. Although in the clarity of hindsight this may seem feasible, when viewing these details from the officer's perspective at the time of the stop the relay of information to Officer Stoffle and the en route call occurred simultaneously. Furthermore, Officer Stoffle still had a suspicion of drug activity warranting his request for the K9 Unit. (See *infra* alternative basis discussion).

possibly had completed it at the same moment Corporal Brown arrived on scene. Had Officer Stoffle taken seven or eight minutes in writing the ticket it would be more apparent that he was intentionally dragging his feet. Conceivably, had Corporal Brown's arrival been lengthy, it appears, from Officer Brown's testimony, that he would have terminated the stop and let the Defendant go on his way. In this case, however, Corporal Brown's arrival some ten minutes after Officer Stoffle's initial contact with the Defendant was a reasonable length of time.

At this point during the incident, the evidence indicates that the length of the stop was extended, at least in part, by the Defendant exiting his vehicle. Very little time elapsed from the time of Corporal Brown's arrival to the time when the Defendant exited his car and approached the Officers. It is clear from the testimony at the hearing, that both Officers viewed this action as raising officer safety concerns in addition to heightening their suspicions regarding the situation. At this point the Officers were justified in conducting the brief exterior sniff by the narcotics dog, which did not unreasonably lengthen the stop.

Having considered the totality of the circumstances, the record, briefing, evidence, and testimony, the Court finds the length of the traffic stop in this case was not unreasonable such that it violated the Defendant's constitutional rights. Just as the Court concluded in Caballes, the stop in this case was not prolonged beyond the time reasonably required for the initial traffic stop. Therefore, the motion to suppress on this basis is denied.

Alternatively, were it necessary, the Court would conclude that the Officers had reasonable articulable suspicion to conduct the K9 sniff of the vehicle. Reasonable suspicion "is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." United States v. Thompson, 282 F.3d 673 (9th Cir. 2002) (citation omitted). In deciding whether an officer had a reasonable suspicion to justify the stop, the Court must consider the totality of the circumstances. United States v. Fernandez-Castillo, 324 F.3d 1114, 1117 (9th Cir. 2003) (citing United States v. Arvizu, 534 U.S. 266, 273 (2002)). "All relevant factors must be considered in the reasonable suspicion calculus–even those factors that, in a different context, might be entirely innocuous." Id.

An officer is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also "be grounded in objective facts and be capable of rational explanation." United States v. Mariscal, 285 F.3d 1127 (9th Cir. 2002) (citing United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir. 2000) and United States v. Twilley, 222 F.3d 1092, 1095 (9th Cir. 2000)). "While an officer should consider these factors in light of [their] experience... 'experience may not be used to give the officers unbridled discretion to make a stop." Id. (citations omitted).

On the morning in question, Officer Stoffle was patrolling the area of a known drug house when he initially observed the Defendant's vehicle one block from the house; although he testified that he did not observe the Defendant actually entering or exiting the drug house and agreed that there was no known association between the Defendant and the house at the time of this incident. At the hearing, the Officer conceded that prior to this incident there were not many contacts with the house but that there had been one prior arrest at the residence and that the same individual had been arrested for possession of paraphernalia.[3] In addition, Officer Stoffle knew that other officers had made arrests of individuals associated to the house, there had been probationary searches, and a grand theft investigation which revealed several subjects connected to the house had prior drug related arrests.

Upon approaching the vehicle, Officer Stoffle testified that he recognized the Defendant based on a contact with him a "couple weeks before" where Officer Stoffle had been to the Defendant's home on a welfare check.[4] During his initial inquiry, Officer Stoffle became suspicious of the Defendant's description of his travel plans testifying that "he had no reason to be in the area that he had seen him" based upon what the Officer knew as far as where the Defendant's home was located

---

[3] "I arrested a subject out of that residence, that I believe, I could not say for sure that he came from that residence, but he came from that direction and at least, if not that house, next door, I had made a traffic stop and arrested that individual. Actually, now I have to recall this prior incident, I believe he told me that he did come [from] that house. So that was one contact that I had personally with that house. I had opinion out there before another incident where I had checked an individuals information regarding a grand theft investigation and had several of these subjects had prior drug related arrests. I also know of other officers that have dealt with people that have been in that house. And dealt with the person that was the primary renter of that house."

[4] The welfare check was executed, in part, because there were allegedly drugs in the Defendant's home. No drugs were discovered in the Defendant's home during the welfare check.

and the route the Defendant had provided.

Officer Stoffle testified that he returned to his patrol vehicle and called Corporal Brown and then started doing a local warrant check and NCIC check. When asked why he called for the K9 Unit, Officer Stoffle testified that he called "because of my previous contact with Mr. Brown, previous contact with Mr. Brown's son, because I had seen that vehicle in an area of what I knew to be a known drug house. Also because of the, I did not feel that Mr. Brown was being up front with me when I asked him where he was coming from and he did not directly tell me, you know, where he was." The defense challenges these grounds noting that the previous contact related to a welfare check at the Defendant's residence which involved drugs but that no drugs were found and that the "known drug house" was a residence that Officer Stoffle had previously made only one arrest in the area involving drug paraphernalia. The defense argues that the Officer did not identify anything in the Defendant's appearance, actions, or any evidence in plain view which would give rise to particularized suspicions of drug activity warranting his request for the narcotics dog.[5]

Based on the totality of the circumstances, the Court would conclude that Officer Stoffle had reasonable articulable suspicion to request the K9 Unit to the scene. The facts known to Officer Stoffle prior to his request included his previous contact with the Defendant, the fact that the Defendant was first observed driving away from a known drug house very early in the morning, and his knowledge of the Defendant's residence coupled with his suspicions regarding the Defendant's route of travel. While separately these factors may not arise suspicion, when considered cumulatively

---

[5] As an additional suspicious factor, the government points to the Defendant's actions in exited his vehicle, locked it, an approached the Officers; arguing these actions evidence an attempt to conceal contraband in the car. The Defendant, however, did not exit his vehicle until after the request for the K9 Unit had been made and, therefore, cannot form the basis for particularized suspicion. However, since the traffic stop was arguably not concluded because Officer Stoffle was just completing the citation when the K9 Unit arrived, the Defendant's exiting and locking his car are considered in the totality of the circumstances from that point forward.

they evidence a particularized suspicion sufficient to warrant requesting a K9 sniff, which is itself only a limited intrusion upon an individual's privacy interest.

2)      Supplemental Motion to Suppress:

The supplemental motion to suppress alleges the Defendant had invoked his right to counsel and the Officers' subsequent questioning violated that right so as to make the evidence of the search and the Defendant's statements excludable. The government argues the Defendant's request for counsel was not unequivocal and that the request was made at a time when the Defendant was not entitled to counsel, because he was not being interrogated by the Officers, and thus the subsequent Miranda waiver was valid. Alternatively, the government asserts the Defendant waived his right to counsel by initiating further conversations with the police after he had been read his Miranda rights.

a)      Right to Counsel:

As a general rule, attachment of a right must precede invocation in time. United States v. Harrison, 213 F.3d 1206, 1209 (9th Cir. 2000) as amended (9th Cir. 2000) (citing McNeil v. Wisconsin, 501 U.S. 171, 175-76 (1991) (holding than an accused's invocation of the Sixth Amendment right to counsel during the bail hearing did not constitute invocation of right to counsel derived by Miranda from the Fifth Amendment's guarantee against compelled self-incrimination.)) (citations omitted). One's Miranda rights attach in the context of a custodial interrogation. United States v. Kim, 292 F.3d 969, 973 (9th Cir. 2002) (citations omitted). The Fifth Amendment right to the presence of counsel during a custodial interrogation may not be invoked anticipatorily outside the context of custodial interrogation. United States v. Wright, 962 F.2d 953, 955 (9th Cir. 1992) (citing McNeil, 501 U.S. at 182 n. 3; see also Edwards v. Arizona, 451 U.S. 477, 484-85 (1981) (Once a suspect asserts his Fifth Amendment right to counsel interrogation must cease and the suspect may not be approached for further interrogation of any offense until counsel has been made available to him.).

In this case, at the time the Defendant attempted to invoke his right to counsel he was in the custody of the police Officers. For purposes of the Fourth Amendment, a seizure occurs when an officer, through some form of physical force or show of authority, restrains the liberty of a citizen.

United States v. Summers, 268 F.3d 683 (9th Cir. 2001). Such restraint occurs if, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. "The inquiry focuses on the objective circumstances of the interrogation, not the subjective views of the officers or the individual being questioned." Kim, 292 F.3d 973 (citing Stansbury v. California, 511 U.S. 318, 322 (1994) (internal quotation marks omitted)). Here, the Officers had possession of the Defendant's registration information and had ordered that he remain beside their patrol car while the dog examined the exterior of the vehicle. In fact at the hearing on this motion, Corporal Brown stated that the Defendant was "not free to leave." However, the Court disagrees with the government's argument that the Defendant's statements were not an unequivocal request for counsel.[6] The Defendant's requests to call his attorney clearly evidenced his desire for counsel. See Alvarez v. Gomez, 185 F.3d 995, 997 (9th Cir. 1999) (citing cases). Because the Defendant was in custody and made an unequivocal request for counsel, the issue here is whether the Defendant was subject to interrogation at the time he made his requests for counsel and, thus, properly invoked his Fifth Amendment right.

Custodial interrogation means questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Miranda v. Arizona, 384 U.S. 436 (1966). "Interrogation is defined as express questioning and its functional equivalent." United States v. Padilla, 387 F.3d 1087, 1093 (9th Cir. 2004) (citation omitted). "The functional equivalent of express questioning includes any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. An incriminating response refers to any response--whether inculpatory or exculpatory--that the prosecution may seek to introduce at trial." Id. (citations omitted). "The test to determine whether questioning is 'interrogation' within

---

[6] In addition, the Court disagrees with the Officers' statements in response to the Defendant's request during the course of the stop. The Officers' tone and comments during the stop and search indicate an apparent disregard for an individual's important right under the Fifth Amendment. While the Court has ultimately concluded in this instance that they were not in error, the Court does not condone the apparent lack of respect shown by the Officers in this regard.

MEMORANDUM ORDER-Page 9
05ORDERS\BROWN_SUP

the meaning of Miranda is whether 'under all of the circumstances involved in a given case, the questions are "reasonably likely to elicit an incriminating response from the suspect."' United States v. Salgado, 292 F.3d 1169, 1171 (9th Cir. 2002) (citations omitted); see also United States v. Orso, 266 F.3d 1030, 1033 (9th Cir. 2001).

Here, the Officers' questions prior to the Miranda warnings were, for the most part, requests for the Defendant's keys and responses to his statements regarding the validity of the search.[7] For instance, in response to the Defendant's challenge of the K9 alert on the driver's handle the Officer stated: "You stuck your arm out the window just before you walked out." To which the Defendant stated "That's how the door opens. Look, um, I need to call my lawyer. This is ridiculous." This statement by the Officer could possibly be viewed as attempting to elicit an incriminating response. However, upon reviewing the audio tape and the testimony at the hearing, the Officer's statement was a direct response to the Defendant's challenge, not an interrogation. Such a colloquy is not an interrogation as contemplated in Miranda. "[B]ecause requesting consent to search is not likely to elicit an incriminating statement, such questioning is not interrogation, and thus Miranda warnings are not required." United States v. LaGrone, 43 F.3d 332, 335 (7th Cir. 1994) (citation omitted). Therefore, the Defendant's attempt to invoke his right to counsel at this point was premature.

---

[7] 
| | |
|---|---|
| Officer: | Give me the keys. |
| Defendant: | I'm not giving you my keys. This is bullshit, this is bullshit. Yeah, I need to call my lawyer, okay? |
| Officer: | Give me the keys to the car. |
| Defendant: | I don't believe this. |
| Officer: | Sir, please turn around. |
| ... | |
| Officer: | It's real simple, okay. I told you that my narcotics dog alerted on the driver's side door (unintelligible) had probable cause to search your vehicle, okay. You not giving me your keys and telling me you want to call your lawyer is obstructing our investigation. |
| Defendant: | How can that be? |
| Officer: | How can it be? |
| Defendant: | Yeah, I need to call my lawyer? I want to call my lawyer. |
| Officer: | You don't have the opportunity to call your lawyer, okay? You can either hand over the keys or you get arrested. |

b)     Miranda Warnings:

The Officers later questioning relating to the contents of the vehicle, however, was an "interrogation" necessitating <u>Miranda</u> warnings.[8]  The Officers testified at the hearing that this questioning was related to officer safety.  The "officer safety exception" to <u>Miranda</u>, applies where the questions "relate to an objectively reasonable need to protect the police or the public from any immediate danger associated with a weapon."  <u>United States v. Reilly</u>, 224 F.3d 986, 992 (9th Cir. 2000) (quoting <u>New York v. Quarles</u>, 467 U.S. 649, 659 n. 8 (1984)).  The exchange in this case was as follows:

| | |
|---|---|
| Officer: | There's nothing, you said you had nothing to be concerned about in there, right? |
| Defendant: | Nothing for you guys to be concerned with, I got my own personal property and stuff. |
| Officer: | Okay, well, we'll take care of anything of your property, okay? There's other stuff in there, what do you mean? |
| Defendant: | There's just stuff in there, I don't know. |
| Officer: | Well, what stuff is in there? |
| Defendant: | What stuff is in there.  I have no idea.  There's some paperwork, actually there's some important paperwork in there. |
| Officer: | Okay I'm not interested in...<u>what I'm interested in is narcotics, okay</u>? |
| Officer: | You say there's nothing like that in there right? |
| Officer: | So it's okay if we go in your car? |
| Defendant: | No, no, it's not.  I just want to have a minute to talk to one of you.  Which one of you is the nice guy? |

---

[8] At this point, the Defendant did not again assert his right to counsel.

(emphasis added).  This conversation occurred after the dog had alerted on the exterior of the vehicle. Officer Stoffle testified that after the dog alerted on the exterior of the car that they asked the Defendant whether there was anything in the vehicle that the Officers needed to be aware of because the dog had alerted on the vehicle.  The Court finds the above quoted exchange between the Officers and the Defendant was an interrogation.  The Officers should have known that the questions regarding the contents of the vehicle and statement that "I'm interested in narcotics" would likely elicit an incriminating response.  The officer safety exception would apply had the Officers' questions related specifically, as their later questions did, to whether the car contained anything that would harm the Officers.[9]  The statements noted above, however, go beyond officer safety concerns and instead, had the Defendant conceded, would have been incriminating.  Therefore, the Court finds the Officers were interrogating the Defendant at this point and should have advised the Defendant of his <u>Miranda</u> rights in order to pursue this line of questioning.  Accordingly, the Defendant's statements in response to the questioning related to the contents of the car prior to the advisement of his <u>Miranda</u> rights are excluded.  The question then is whether the subsequent advisement of <u>Miranda</u> and waiver by the Defendant is effective to render the evidence of the search and Defendant's post-<u>Miranda</u> statements admissible.

Following an initial search of the car, Officer Stoffle advised the Defendant of his <u>Miranda</u> rights whereupon the Defendant stated that he understood his rights and then voluntarily responded to the Officer's statement that he was "free to say whatever you want to say."[10]  The Officers finished searching the vehicle and "began asking Mr. Brown questions about what we found in the vehicle."

---

[9] After taking the keys from the Defendant and beginning their search of the interior of the car, Officer Stoffle again inquired of the Defendant regarding whether there was anything in the vehicle that they should be aware of, testifying that he "normally ask if there is anything that will hurt us, especially if we start finding drug related material we want to be aware of any needles [or] weapons."

[10] Officer: Yeah. Let me know that you understand the rights that I have just read to you.  Do you understand your rights?
Defendant: Yes, sir.
Officer: Okay, so now that you have those rights in mind, and you understand them, you're free to say whatever you want to say.
Defendant: Okay, all I, all I'm saying is I know things about people, I can tell you things about people.

The Defendant and Officer Stoffle then engaged in a discussion whereupon the Defendant volunteered the statements at issue here.

"A valid waiver 'cannot be established by showing only that [the Defendant] responded to further police-initiated custodial interrogation' even after being newly advised of his rights." Alvarez, 185 F.3d at 998 (quoting Edwards, 451 U.S. at 484) (citations omitted). This Circuit has recognized the Supreme Court's decision stating "It is an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period." United States v. Orso, 266 F.3d 1030, 1036 (9th Cir. 2001) (en banc) (quoting Oregon v. Elstad, 470 U.S. 298, 309 (1985). "When neither the initial nor the subsequent admission is coerced, little justification exists for permitting the highly probative evidence of a voluntary confession to be irretrievably lost to the factfinder." Pollard v. Galaza, 290 F.3d 1030, 1036 (9th Cir. 2002) (citing Elstad, 470 U.S. 298, 312 (1985)). "A defendant's mental state alone does not make a statement involuntary. Rather, coercive conduct by police must have caused [the defendant] to make the statements." Id. at 1039 (quotations and citations omitted).

As in Elstad, the pre-Miranda interrogation in this case was "a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will." Elstad, 470 U.S. at 309.[11] The initial pre-Miranda interrogation was not coercive such that the subsequent post-Miranda waiver was invalid. The later waiver was not the product nor tainted by any previous coercion by the Officers. More importantly, the advisement of the Miranda warnings was effective and gave the Defendant notice of his rights and opportunity to invoke those rights. The evidence clearly shows the Defendant understood and voluntarily waived those rights before talking with the Officers. In viewing the totality of the circumstances in this case the Court finds that although the Miranda advisement was given shortly

---

[11] This is not the case where the Officers' strategy was to question-first and advise later thereby undermining the effectiveness of Miranda warnings. See Missouri v. Seibert, 124 S.Ct. 2601, 2612 (2004).

MEMORANDUM ORDER-Page 13
05ORDERS\BROWN_SUP

after the interrogation regarding the contents of the car, the Defendant understood his constitutional rights and voluntarily waived the same. Therefore, the Court finds the Defendant's waiver of his Miranda rights was knowing and voluntary and the motion to suppress is denied as to his post-Miranda statements.

        c)      Evidence of the Search of the Vehicle:

As to the evidence obtained from the search of the vehicle the Court denies the motion to suppress. "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.' " United States v. Pulliam, 405 F.3d 782 (9th Cir. 2005) (citations omitted). "It 'extends as well to the indirect as the direct products' of unconstitutional conduct." Id. (quoting Wong Sun v. United States, 371 U.S. 471, 484 (1963)). Suppression is not justified unless the evidence is "in some sense the product of illegal governmental activity." United States v. Crews, 445 U.S. 463, 471 (1980). Evidence should not be excluded as fruit of the poisonous tree "unless the illegality is at least the 'but for' cause of the discovery of the evidence." Segura, 468 U.S. at 815.

In this case, the Officers had probable cause to search the vehicle as a result of the dog sniff and surrounding circumstances. Therefore, the search and resulting discovery of evidence in the vehicle was not a product of illegal government action. Likewise, the pre-Miranda interrogation of the Defendant did not lead to the discovery of the evidence of the search because the Officers had a legal basis for conducting the search.

        d)      Conclusion:

The motion to suppress is denied as to the allegation that Defendant's invocation of counsel prior to the Officers' questioning warrants exclusion of all evidence obtained and statements made during the stop. As determined above, the Defendant's prior requests for counsel were not in response to an interrogation and, thus, outside of the context in which one's Miranda rights attach. However, the motion is granted as to the Defendant's responses to the Officers' pre-Miranda questions regarding the contents of the car. Because the Defendant later voluntarily waived his rights and was not subject to coercion, the Defendant's post-Miranda statements to the Officers are admissible. The

evidence discovered during the search of the vehicle is also admissible as it was not the product of any illegal government conduct.

## ORDER

Based on the foregoing and being fully advised in the premises, **IT IS HEREBY ORDERED** that Defendant's motions to suppress (Dkt. Nos. 13, 33) are **GRANTED IN PART AND DENIED IN PART**. The motions are denied as to the evidence of the search and the Defendant's statements to Officers with the exception of those statements made pre-Miranda in response to the Officers' questions regarding the contents of the vehicle.

DATED: **October 26, 2005**

*signature*

Honorable Edward J. Lodge
U. S. District Judge